1             UNITED STATES BANKRUPTCY COURT
               EASTERN DISTRICT OF NEW YORK

2

3

4 In re:              .  Brooklyn, New York
                   .  September 11, 2014

5 MOHAMMED HASSAN,       .
                   .  12-43627

6         Debtor.     .  Calendar Time:
. . . . . . . . . . . . . . .  3:00 P.M.

7

8

          [34] MOTION TO COMPROMISE CONTROVERSY
9

10   [48] AMENDED MOTION TO CONVERT CASE TO CHAPTER 13
    (RE: RELATED DOCUMENT(S) [46] MOTION TO CONVERT
              CASE TO CHAPTER 13

11

12         BEFORE HONORABLE CARLA E. CRAIG

13

14 Attorney for Debtor:      DAHIYA LAW OFFICES, LLC
                     75 Maiden Lane

15                   Suite 506
                     New York, New York  10038

16                   BY:  KARAMVIR DAHIYA, ESQ.

17 Attorney for Richard
O'Connell, Chapter 7
18 Trustee:              SAMUEL KRAMER, ESQ.
                     225 Broadway

19                   Suite 3300
                     New York, New York  10007

20 Attorney for Yair Kerstein:  HAROLD SOMER, ESQ.
21                   1025 Old Country Road
                   Suite 404
22                   Westbury, New York  11590

23

24

25

```
 1                                                               2

 2

3ourt Recorder Operator:        JULIET LECKY

 4
Court Transcriber:              CATHERINE ALDRICH
 5                              COMPU-SCRIBE, INC.
                                2376 Cleveland Street
 6                              Bellmore, New York  11710

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20
Proceedings recorded by electronic sound recording,
21ranscript produced by transcription service.

22

23

24

25
```

1          THE CLERK:  Mohammed Hassan.

2          May we have appearances, please?

3          MR. DAHIYA:  Good afternoon, Judge.  Karamvir Dahiya

4 for Mr. Mohammed Hassan.

5          MR. KRAMER:  Samuel Kramer, attorney for Richard

6 O'Connell, Chapter 7 trustee.

7          MR. SOMER:  Good afternoon, your Honor.  Harold

8 Somer for Yair Kerstein.

9          THE COURT:  Okay.  All right.  Go ahead, Mr. Kramer.

10          MR. KRAMER:  We're on today, your Honor, on two

11 things.  One is the adjourn date on our -- the trustee's

12 motion pursuant to Rule 9019 to approve a settlement with Mr.

13 Kerstein pursuant to which the trustee will be paid --

14 actually the trustee has been paid, it's in his account now,

15 $45,000 in resolution of all claims, and on the debtor's

16 motion to convert the case to Chapter 13.

17          The last time we were here the debtor indicated that

18 he had additional evidence.  Your Honor issued an order.

19          THE COURT:  And this would be the point that on

20 which evidence was to be submitted was on the question of

21 whether the debtor is an individual with regular income --

22          MR. KRAMER:  Yes.

23          THE COURT:  -- that would qualify -- is eligible to

24 be a Chapter -- a debtor under Chapter 13, and the language in

1 particular under Section 109 is that --

2          MR. KRAMER:  I could --

3          THE COURT:  -- a person -- an individual with

4 regular income.  Okay.  One second.  Okay.  Excuse me.  So

5 regular income is defined in Section 10130 --

6          MR. KRAMER:  I have it here, your Honor.

7          THE COURT:  -- as being -- well, let me just read it

8 into the record so that we're all on the same page.  The term,

9 individual with regular income is defined in Section 10130 of

10 the Bankruptcy Code as being, "An individual whose income is

11 sufficiently stable and regular to enable such individual to

12 make payments under a plan under Chapter 13 of this Title."

13          Okay.  So was the -- that is the point that counsel

14 was given an opportunity to submit evidence on.

15          MR. KRAMER:  And it is the debtor's burden to meet

16 that under the In re:  Antoine 208 BR 17.  Your Honor issued

17 an order after the last hearing, which was quite specific

18 about the need to submit those documents by August 22nd, 2014

19 together with indications of the witnesses who would support

20 that, those claims of regular income.

21          The only that the debtor submitted was on August

22 14th, docket number 58, which appears to be -- there's no

23 affidavit, there's no explanation, it's just 21 pages, nine of

24 which appear to be repetitive, and these appear to be

1  checkstubs which the last one of which is over a year, or

2  approximately one year ago.  They total $88,949, and as I say,

3  they are dated from January 12th, 2012 through October 21st,

4  2013.

5          There is no affidavit.  There is no explanation.

6  There is no anything in compliance with your Honor's order

7  with respect to substantiating the validity of this submission

8  as proof of regular income.  The debtor did make another

9  submission which appears on docket number 59, but immediately

10 after that was submitted on again August 14th, the very next

11 day your Honor issued an order that restricted access to the

12 document.  I have never seen it, and your order said the filer

13 is directed to refile the document together with all

14 attachments originally filed, redacted as required pursuant --

15 by Bankruptcy Rule 9037 on or before August 20th, 2014.

16 That's docket 60 is your Honor's order.  Again, there was no

17 compliance with that order.

18         So we have two very specific orders which required

19 very specific things, none of which were performed.  The

20 debtor has failed to failed its burden under the case I just

21 cited and under Rule 10130, Section 10130 and under In Re:

22 Antoine.  Your Honor has indicated previously that this is the

23 only issue which is relevant at this point, and we would

24 respectfully submit that there is no reason to grant the

1 motion to convert and every reason to grant the 9019

2 application.

3           Thank you, your Honor.

4           MR. DAHIYA:  Your Honor asked me to submit evidence

5 that this is a man with regular income.  I've submitted

6 invoices.

7           THE COURT:  Well, what I directed you to do was to

8 submit evidence, and I also directed that any document must be

9 accompanied with -- supported by an affidavit that establishes

10 the document's admissibility and explains how the document

11 shows that the debtor is an individual with regular income,

12 and that all supporting affidavits were to be filed by August

13 22, and no supporting affidavit was filed.

14           MR. DAHIYA:  I did file the one-year bank statement,

15 your Honor, where he makes 40,000, $42,000.

16           THE COURT:  But you didn't find any -- first of all

17 --

18           MR. DAHIYA:  Yes, your Honor.

19           THE COURT:  -- you didn't -- the bank statements

20 that you filed --

21           MR. DAHIYA:  Yes, your Honor.

22           THE COURT:  -- don't show $40,000.

23           MR. DAHIYA:  They --

24           THE COURT:  You filed something today.

1            MR. DAHIYA:  No, no.  That was just to show ongoing

2   income.  Previously I filed 35,000, more than 30,000, 35,000.

3            THE COURT:  Even if I were to look at --

4            MR. DAHIYA:  Yes.

5            THE COURT:  -- those bank statements, they don't

6   show net income, positive net income over that period of time

7   of more than approximately $5,000.

8            MR. DAHIYA:  But that's the -- respectfully, you're

9   right, your Honor.  There is --

10            THE COURT:  So you have to have net --

11            MR. DAHIYA:  No, but --

12            THE COURT:  The documents, in order to be eligible,

13   the debtor must have income that is available to make plan

14   payments sufficient --

15            MR. DAHIYA:  That is true, your Honor.

16            THE COURT:  And this doesn't show that.

17            MR. DAHIYA:  The -- your Honor, I think we are

18   respectfully conflating two things.

19            THE COURT:  Sufficiently stable and regular to

20   enable such individual to make payments under a plan.  What

21   you submitted were bank statements from a -- that are business

22   bank statements --

23            MR. DAHIYA:  Yes, your Honor.  That is true.

24            THE COURT:  -- because the debtor operates as a DBA.

1          MR. DAHIYA:  Yes.

2          THE COURT:  And they show -- they don't show --

3          MR. DAHIYA:  Positive?

4          THE COURT:  They don't show positive net income, and

5    they don't show regular payments to the debtor either.

6          MR. DAHIYA:  That is true because he's -- he is in a

7    business, your Honor.  The income is -- he does make income of

8    30, 40 -- between 30 and 40,000.  It goes up and down.  He's

9    in business.  Now --

10          THE COURT:  But his gross income -- the gross income

11   of his business --

12          MR. DAHIYA:  Yes, your Honor.

13          THE COURT:  -- is not what we're talking about.

14   We're talking about his individual income, which of course

15   would be net after the payment of his business expenses, and

16   it has to be sufficiently stable and regular to enable the

17   individual to make plan payments, which I don't believe this

18   shows.  It shows at most -- it shows net income --

19          MR. DAHIYA:  Of 4 or 5,000.  That's what --

20          THE COURT:  -- of, for that six-month period of

21   $1,281.79.  So that's the net income that is shown, and as far

22   as -- there's no indication either in the bank statements that

23   I could ascertain nor in any affidavits since there wasn't an

24   affidavit, of whether any of the deductions were -- went to

1  him, would be -- were his income.  So --

2          MR. DAHIYA:  There's an affidavit of I think it was

3  -- the affidavit was filed prior to when we filed the

4  objection, when we filed the objection to the settlement.

5          THE COURT:  Yes, but the affidavit doesn't

6  authenticate these documents or explain how they show his

7  income, which is what you were directed to do.  You were

8  directed to file an affidavit accompanying the documents that

9  explained how they -- authenticated them and explained how

10  they went to show that the debtor is an individual with

11  regular income as required under Section 109 --

12          MR. DAHIYA:  That is true.

13          THE COURT:  -- and Section 10130, and that was not

14  done, and even if I were to look at those documents, which I

15  am not going to do, they are not properly considered on this

16  motion, but if I did they do not show that he's an individual

17  with regular income.

18          MR. DAHIYA:  Your Honor --

19          THE COURT:  They show net, as I said, net income of

20  about -- of slightly over $1,000 for the six-month period, and

21  that does not establish that he is an individual with regular

22  income.

23          MR. DAHIYA:  Respectfully, there's a little

24  distinction I wish to draw, your Honor, there is a difference

1 between the feasibility and eligibility --

2          THE COURT:  That's correct, but eligibility, and I'm

3 not conflating the two.  I'm very cognizant of that

4 distinction.

5          MR. DAHIYA:  Yes.

6          THE COURT:  What I'm looking at is whether he is an

7 individual -- whether you have carried the burden of proof to

8 show that he is an individual with regular income, and the

9 Code specifically defines that in Section 10130 as meaning,

10 "An individual whose income is sufficiently stable and regular

11 to enable such individual to make payments under a plan under

12 Chapter 13 of this Title," and you have not -- number one, you

13 didn't comply with my order.

14          By the terms of the order these documents are not to

15 be considered because you didn't accompany them with an

16 affidavit, nothing authenticating them, nothing explaining

17 them, explaining how they go to establish it.  Number two,

18 they don't show that he has income that is sufficiently stable

19 and regular to enable him to make payments under a plan under

20 Chapter 13 of this Title.

21          So I think I am constrained to deny this application

22 to convert the case to Chapter 13.

23          MR. DAHIYA:  Your Honor, I -- if the debtor -- if

24 the debtor does not come forward with the plan payments it's

1   fine.  The case can be converted to Chapter 7 trustee.

2           THE COURT:  I understand that, but in the first

3   instance conversion is not appropriate unless the debtor is

4   eligible to be a debtor in Chapter 13, and --

5           MR. DAHIYA:  That is true.

6           THE COURT:  -- I -- and it's not -- it is -- there

7   is an objection here by two parties in interest to the

8   conversion of the case under Chapter 13 -- to Chapter 13, and

9   it is incumbent upon the debtor to establish that he's

10  eligible, and he hasn't done that.

11          MR. DAHIYA:  There is -- it's not all this -- the

12  way he operates is like it is not an independent business.

13          THE COURT:  Okay.  See, I'm -- what you're telling

14  me here is not -- means nothing to me because you were

15  directed --

16          MR. DAHIYA:  Yes.

17          THE COURT:  -- to put any type of explanation that

18  you wanted to make of this -- of the documents that you were

19  submitting.  You were directed to put that -- that that would

20  be submitted by way of affidavit.

21          MR. DAHIYA:  I was supposed to by --

22          THE COURT:  You didn't do that.  You didn't do that.

23          MR. DAHIYA:  What happened was I wanted to prepare -

24  -

1          THE COURT:  I don't care what happened.

2          MR. DAHIYA:  It's important.

3          THE COURT:  I was very clear in this order, and I am

4  -- and this was your second chance to submit this.  We had

5  this -- this is our third hearing on this, and I was clear in

6  my order for a very good reason, because I want it to be -- I

7  wanted the rules, the ground rules that we were operating

8  under to be crystal clear, and you -- they were, and you did

9  not comply.

10          MR. DAHIYA:  I -- that's exactly what I was saying,

11  your Honor, and I wanted to meet my client on 13th or 14, I

12  wanted to sit down, prepare.  On 14th, on 15th I have to catch

13  a flight.  I was out of the country.

14          THE COURT:  Well, that's really unfortunate that

15  your --

16          MR. DAHIYA:  I came back on the 1st.

17          THE COURT:  Your travel schedule unfortunately is

18  not something that is to my mind an excuse for this.

19          MR. DAHIYA:  I can bring -- my client can testify if

20  you allow him, but --

21          THE COURT:  It's -- I -- no, I won't.

22          MR. DAHIYA:  About the income.

23          THE COURT:  No.  I won't allow him to because, as I

24  said in my order, that any witness whose affidavit was not

1  submitted would not be permitted to testify.

2           MR. DAHIYA:  I only have an affidavit wherein he

3  says that he makes $35,000 and he makes enough money, your

4  Honor.  That's --

5           THE COURT:  Yes, except that affidavit doesn't -- it

6  doesn't pertain to these bank statements, and it doesn't

7  substantiate -- it's not substantiated by the bank statements,

8  which don't show net earnings of that amount insofar as I can

9  tell by looking at them.

10          MR. DAHIYA:  That is true.  I see the bank

11 statement.  That does not -- it's -- the bank statement -- I

12 looked at the bank statement.

13          THE COURT:  And he didn't provide an explanation

14 that would lead me or enable me to conclude otherwise.

15          MR. DAHIYA:  All I can --

16          THE COURT:  And the reason that I entered this

17 order --

18          MR. DAHIYA:  Yes.

19          THE COURT:  -- was just to prevent just such a thing

20 from happening as you're trying to do today, which is filing a

21 document on the day of the hearing --

22          MR. DAHIYA:  No, that is --

23          THE COURT:  -- which doesn't give -- which does not

24 give your adversaries --

1       MR. DAHIYA:  That is true.

2       THE COURT:  -- a fair opportunity to review or to

3  respond.

4       MR. DAHIYA:  That is true.

5       THE COURT:  And that is why I set a schedule

6  allowing ample time --

7       MR. DAHIYA:  Yes.

8       THE COURT:  -- for you to provide this information

9  and providing them with an opportunity to respond.

10      MR. DAHIYA:  That is true.

11      THE COURT:  So respectfully, I am not going to

12  consider the -- whatever it is you want to proffer at this

13  point.

14      MR. DAHIYA:  But your Honor, even if you go by like

15  his net income of $1,000, let's say even if we go by this --

16      THE COURT:  $1,000 over the period of -- over a

17  period of six months?

18      MR. DAHIYA:  No.  I mean every month he --

19      THE COURT:  No.  That's not what the bank statements

20  show.  They show if you net out the --

21      MR. DAHIYA:  That is true.

22      THE COURT:  It's a net plus of $1,200 over a period

23  of six months because there are months --

24      MR. DAHIYA:  Yes.  That is true.

1        THE COURT:  -- in which he, according to these bank

2   statements, in which he has a negative balance in his account.

3    So --

4        MR. DAHIYA:  Your Honor, is it --

5        THE COURT:  So you were saying -- you were going to

6   say even if you look at $1,000 a month?

7        MR. DAHIYA:  I mean the issue is if he has got

8   regular income, he has regular income, but there's no net

9   income, you're right.  I agree with you.

10        THE COURT:  No, there isn't.  It seems to me there's

11   no regular income if his income is negative in one month,

12   positive in the next month, negative in the next month,

13   positive in the next month, negative, negative, with a total

14   positive over a period of six months of $1,200, which is

15   clearly insufficient to make plan payments, and it's not

16   regular.  It isn't -- it doesn't -- it's in varying amounts,

17   negatives and positives over this whole period of time.  So

18   it's not -- this tends not to show -- to the extent this shows

19   anything, it shows that he is not an individual with regular

20   income.

21        MR. DAHIYA:  I mean the documents are what they are,

22   your Honor.  We cannot twist or emasculate.  We cannot like

23   play around with that to create or mis-create anything.  This

24   is the bank statement.  He does make income -- some incomes.

1  I mean not all income is put in the bank, but --

2          THE COURT:  Okay.  I am not -- then that was

3  something, if there was additional proof of income you were

4  going to submit, you should have submitted it.

5          MR. DAHIYA:  There is no additional proof other than

6  his words, that's all.

7          THE COURT:  Well, you didn't provide an affidavit

8  with that either, so I'm not going to permit him to testify

9  about that at this point because I was very clear about this.

10          MR. DAHIYA:  That is -- your Honor, I leave it up to

11  you if -- I mean the documents we rely on, these are the

12  documents, the bank statements given.  It's up and down.  It's

13  not -- I mean he's a businessman, typical businessman.  He

14  goes to the market, gets a contract, gets it done.  If you

15  look into the statements, your Honor, these are the statements

16  that are given and it takes six months to get the money back

17  from the state and other parties.

18          MR. SOMER:  Your Honor, I have to object to what

19  counsel is saying.

20          THE COURT:  Yes.

21          MR. SOMER:  He's testifying for the debtor.

22          THE COURT:  None of this is something -- is anything

23  that can be given any weight here because this is not -- what

24  your representations on the record are not in any way, shape,

1  or form evidence, nor are they substantiated by anything that

2  is in the record, and it was just to avoid the problem of

3  dealing with counsel's unsubstantiated representations that I

4  directed that the evidence be submitted in advance with an

5  affidavit from the witness, the -- a competent witness.

6          MR. DAHIYA:  That is true.  The only evidence, the

7  hard concrete evidence is the bank statement, and only his

8  words can testify, that's all.  I mean --

9          THE COURT:  Okay.  All right.  I'm respectfully

10 denying the motion to convert.

11         MR. DAHIYA:  Your Honor, is it possible, now coming

12 back to the, as far as the motion for settlement is concerned,

13 our request is that we can -- if our claims can be abandoned

14 we wish to pursue other claims respectfully because why am I

15 saying this?  Because Mr. Kerstein, the lender, has liens on

16 his house and personal residence and all, they're serious

17 claims, and I don't think we should let those claims be

18 compromised.

19         THE COURT:  Well, but how -- I think in reviewing a

20 settlement what I have to evaluate is benefit to creditors.

21 The interests of the debtor are really not to be considered

22 here.  It's benefit to the creditors, and it's hard for me to

23 see how there's a benefit to creditors in this.

24         MR. DAHIYA:  I mean these are the claims if you look

1 into -- I did mention in my objection to the settlement that

2 the 341, there are various issues of whether I was -- the

3 debtor was given a chance, that there --

4            THE COURT:  Given what chance?

5            MR. DAHIYA:  I mean once a trustee discover assets

6 he is supposed to tell the debtor.

7            THE COURT:  Where does that -- okay.  Where do you -

8 - what do you come up with?  Where does this exist in your

9 view?

10           MR. DAHIYA:  That exists in 341, Section 342(d).

11           THE COURT:  Okay.  Section 342(d), let's just look

12 at that for a minute because you've said this before, and I

13 honestly don't know what you're talking about.  Section 342(d)

14 says that, "In a case under Chapter 7 of this Title in which

15 the debtor is an individual and in which the presumption of

16 abuse arises under Section 707(b), the clerk shall give

17 written notice to all creditors not later than ten days after

18 the date of the filing that the petition -- of the petition

19 that the presumption of abuse has arisen.  So I don't know

20 where -- what that has to do with what you're saying.

21           MR. DAHIYA:  No, the -- I think the section is

22 341(5), the conclusion of the  prior to the conclusion of the

23 proceedings.  That's Section 341.  Sorry.  Section 341(b).

24           THE COURT:  Well, I don't have -- I don't think that

1  -- okay.  Mr. Kramer, do you have some response that you want

2  to give to this?

3          MR. KRAMER:  I submitted on docket number 51.  I

4  addressed that issue, and for one, I apologize for

5  familiarizing myself with what I wrote previously, but your

6  Honor, the debtor had his 341 meeting before the prior

7  trustee, Trustee Krohn.  The objection is posited on the idea

8  that somehow the trustee was supposed to take the debtor

9  through his options under Chapter 7 and 13, but Mr. O'Connell

10  was the successor trustee to Mr. Krohn.  Mr. Krohn took his

11  341 meeting, and to the extent that there was any issue

12  regarding the claims that are being raised in opposition to

13  the 9019, they were addressed by Mr. Krohn previously, and he

14  was represented by counsel.  We should also add that.

15          THE COURT:  So the debtor was represented by counsel

16  in this?

17          MR. KRAMER:  Yes.

18          MR. DAHIYA:  That does not make a difference if you

19  --

20          MR. KRAMER:  It makes all the difference in the

21  world.

22          THE COURT:  But I don't think that this has anything

23  to do with whether the settlement should be approved or not.

24          MR. DAHIYA:  I mean the settlement, I mean --

1         THE COURT:  The settlement is a different -- it's a
2  wholly different question.

3         MR. DAHIYA:  The entire thing, if you look into it,
4  I mean the way it is an unperfected lien, the way the trustee
5  is hypothetically in credit, but that has not been exercised.
6   For $45,000 it amazes how everything is given up.  Basically
7  the private lender walks away free.

8         THE COURT:  All right.  Do you -- would you like --
9  do you want to -- let's see.  Just one second.

10         MR. DAHIYA:  At least our claims to be abandoned to
11  us, that's all we are looking for, Judge.

12         THE COURT:  But does the settlement involve a
13  compromise of these claims?  It does, does it not?  I'm asking
14  Mr. Kramer.

15         MR. KRAMER:  Yes.  Everything.

16         THE COURT:  Because that's what is being -- what
17  $45,000 is being paid for, correct?

18         MR. KRAMER:  $45,000 is being paid because we
19  thought we had an objection to the mortgage, and we negotiated
20  a settlement based on that objection, and in order to achieve
21  a payment the terms of the settlement had to be -- had to give
22  what they gave, otherwise I wouldn't be getting the $45,000.

23         THE COURT:  Okay.  So explain to me why you think
24  $45,000 is an appropriate amount.

1     MR. KRAMER:  If I do that I'm going to be disclosing

2 the weaknesses of my case regarding the mortgage which I would

3 be attacking.

4     THE COURT:  Well, I'm afraid you're going to have to

5 at least provide some kind of explanation.

6     MR. KRAMER:  I've done that in my papers.  I mean

7 I've talked about it in the most general terms.  You know,

8 when -- I've brought 9019 motions many times before, and it's

9 -- you know, it's a line, the razor's edge that the trustee

10 has to walk between explaining that for $45,000 I'm getting

11 above the -- I think the standard is above lowest standard of

12 reasonableness.  I forget the precise words, but there are --

13 when I -- we thought when we got the case that there were

14 issues with the mortgage which we would be able to prevail in

15 state court.

16     On further analysis we determined that our case is

17 not as strong as we thought it was, that the documents indeed

18 would be susceptible to many of the arguments that were being

19 raised.  $45,000, I will say that $45,000, based on what I

20 know about these documents, is a very good deal.

21     THE COURT:  All right.  So Mr. Dahiya, the factors

22 that are to be considered in evaluating a settlement do not

23 include the interests of the debtor, whether the debtor would

24 prefer to continue the litigation.  It's the interests of

1 creditors, and --

2          MR. DAHIYA:  Even if the --

3          THE COURT:  And I don't see anyone here objecting

4 based upon the interests of creditors.

5          MR. DAHIYA:  I mean even if your Honor, he happens

6 to be -- even if the trustee is a fiduciary, I don't

7 understand how even if the trustee is a fiduciary for the

8 debtor.  Second, this loan itself --

9          THE COURT:  He's a fiduciary to creditors.

10          MR. DAHIYA:  To a solvent debtor.  I mean this loan

11 --

12          THE COURT:  He's not a solvent debtor.  This is a no

13 asset --

14          MR. DAHIYA:  Of course he's solvent, your Honor.

15          THE COURT:  This is a no-asset case.  He's clearly

16 an insolvent debtor.  There's no -- there's not going to be a

17 return to the debtor here.  I don't know what universe he's a

18 solvent debtor.

19          MR. DAHIYA:  What they're looking into is, if you

20 look into the settlement, they're saying that we looked into

21 the mortgage papers and the mortgage papers, there are real

22 issues, your Honor.  What has happened in the mortgage papers

23 is I mentioned that in my papers is they say that they have a

24 proper mortgage registration.  They filed the mortgage, they

1 filed applications to avoid mortgage taxes, wherein they

2 stated it's a home, it's a residence.

3          The mortgage filing itself is not a proper one.  The

4 trustee talks only about that thing, but the trustee has not

5 examined other claims of usury, other claims --

6          MR. KRAMER:  Your Honor, the last time we were here

7 your Honor made it very clear that you did not want to hear

8 about usury or Tyler.  I just want to be clear about that.

9          THE COURT:  Okay, okay.

10          MR. DAHIYA:  So let me finish.

11          THE COURT:  Just one minute, please.

12          MR. DAHIYA:  Just we are losing everything.  At

13 least leave our claim to us, that's all.

14          THE COURT:  I don't think so because that's the

15 whole point.  They're not your claims.  They're the trustee's

16 claims.

17          MR. DAHIYA:  But that's the other interesting part.

18          THE COURT:  They're the trustee's claims.

19          MR. DAHIYA:  Can I please address one big issue that

20 has happened here is the way the Supreme Court is heading

21 towards --

22          THE COURT:  Just one second.  Just one second.

23          MR. DAHIYA:  Yes.

24          THE COURT:  Okay.  All right.  At this point I am

1 really not interested in considering any arguments that you

2 haven't previously made in your papers because I think you --

3 I don't believe it's fair for you to be coming up with new

4 ideas now, and --

5         MR. DAHIYA:  No, no, no, no.

6         THE COURT:  -- I believe that you've had ample

7 opportunity.

8         MR. DAHIYA:  No.  I'm not coming up with new -- I

9 have to say something very important, your Honor, because this

10 will have an impact on us.  All what I'm saying --

11         THE COURT:  It has an impact on you, but it's not an

12 impact that is entitled to be considered.

13         MR. DAHIYA:  Of course these are my claims, and I'll

14 tell you how these are my claims.

15         THE COURT:  They belong to the estate.

16         MR. DAHIYA:  No, no, but that's exactly what I want

17 to tell you, and that issue, the issue of standing can be

18 raised even on an appeal.

19         THE COURT:  Oh, I'm --

20         MR. DAHIYA:  There is something I want to say.

21 Please hear me just one minute.  Not more than this.  It is

22 widely believed that these claims are claims of the estate.

23 They -- but now the way that -- it is going to sound very

24 grandiose, but the established precedents by the Supreme Court

1  and at least in case laws is clear.  Party has to have an

2  injury to have a claim.  The injured party is this one, the

3  debtor.  The estate has become a separate issue.  The trustee

4  --

5        THE COURT:  I didn't say your client didn't have

6  standing.  I said that under 9019 your client's interests are

7  not something that is weighed in determining whether the

8  settlement should be approved.  I didn't say he doesn't have

9  standing.

10       MR. DAHIYA:  I mean respectfully, Judge, isn't the

11  trustee supposed to examine, look into the claims, for

12  example, he raised, and the trustee was aware of this that

13  these are the -- we are just talking about whether the lien is

14  proper or not, but they have not given a single sentence as to

15  what it is because in the state court the counsel for Mr.

16  Langer -- no, for Mr. Kerstein filed a statement that these

17  claims are usury claims, HUPA (ph.) claims.  We cannot raise

18  them.  They belong to the estate.  The trustee has not taken

19  care of that.  He's not examined that.

20       THE COURT:  HUPA claims are not claims that can be

21  asserted against an individual in any event.

22       MR. DAHIYA:  I'm sorry.  What?  The trustee is

23  supposed to examine these claims.  I mean the trustee says,

24  "Well, walk away."  They are making the walk away for 45,000.

1  They're giving up -- they have a claim of more than 3,

2  400,000.  If this claim is denied, the creditors get hundred

3  cent on a dollar, your Honor.  They're not getting hundred

4  cents on a dollar here.

5            The best interests of the creditors can be served by

6  foreclosing claim of the lender, which this trustee is not

7  doing.

8            THE COURT:  Well, I think you would have to -- given

9  the showing that the trustee's made that this is an arm's-

10 length transaction, it's supported by the creditors, it is --

11 it follows a period of litigation that was fairly extensive,

12 right?  It's been about how long?  What was the period of time

13 that this --

14            MR. KRAMER:  In the state court?

15            THE COURT:  This litigation, the investigation that

16 you went on.

17            MR. KRAMER:  Oh, from the moment that Mr. O'Connell

18 was appointed in filing number five by the debtor.

19            THE COURT:  So --

20            MR. KRAMER:  We didn't just trip over this, your

21 Honor.

22            THE COURT:  I was going to -- okay.  All right.

23 Let's do it this way.  What I'm saying is that I think that

24 the trustee's made a showing that this is an appropriate

1  settlement.  Certainly he's made a prima facie showing, and at

2  this point I think the burden is on you to come forward with

3  some more -- some other showing than unsubstantiated, vague

4  allegations, which is all that really has been done.

5          MR. DAHIYA:  There's no -- if you look into my

6  objections and my notice of motion to convert, the exhibits I

7  filed in the state court, the same exhibits have been attached

8  here.  These claims, the lender has no claim.  The lender

9  really -- I mean there are claims against the lender by the

10 debtor that not should be thrown away like this.

11         THE COURT:  Okay.  I have looked at your affidavit,

12 the papers you filed in opposition to the motion to convert,

13 and they are devoid of any specifics about the nature of the

14 claims that you believe that you have.  Okay.  The papers that

15 you filed --

16         MR. DAHIYA:  I mean --

17         THE COURT:  Just one -- don't interrupt me, please.

18  The paper that you filed, I assume you're referring to the

19 document you filed on August 7th on the day of the hearing,

20 the last hearing which consisted of copies of the law and a --

21 of a statute, copy of a statute --

22         MR. DAHIYA:  No.  Not that.

23         THE COURT:  -- and which is New York Tax Law Section

24 253-1(a), and the copy of the note and the mortgage, and that

1  -- without any explanation, and that in and of itself provides

2  no basis on which for me to conclude that this is not an

3  appropriate settlement.  You can't just throw documents onto

4  the docket say, "See, read those.  They show that this is an

5  inappropriate settlement."  So as far as I'm concerned, you

6  have not established -- you've not come forward with anything

7  that would call into question the appropriateness of this

8  settlement.

9          MR. DAHIYA:  Your Honor, if you look into my Exhibit

10 B of the motion to convert, I have explained -- that document

11 explained in detail why this -- why the lender does not have a

12 proper claim against the estate.  I mentioned that, and I mean

13 this is not a case wherein issues were argued in the state

14 court.  I mean this is a default just --

15          THE COURT:  Was there a -- is there a judgment of

16 foreclosure in this case?

17          MR. DAHIYA:  Yes.

18          THE COURT:  There was a judgment of foreclosure.  Is

19 that correct?

20          MR. DAHIYA:  Yes.

21          MR. SOMER:  Yes, your Honor.

22          THE COURT:  A judgment of foreclosure was entered in

23 favor of Mr. Kerstein.  Is that right?

24          MR. SOMER:  Correct, your Honor.

1          THE COURT:  Okay.  And so these are -- these claims

2 are claims against Mr. Kerstein.  Is that correct?

3          MR. DAHIYA:  Yes, your Honor.

4          THE COURT:  Okay.  So these are claims that are

5 foreclosed by the judgment of foreclosure because they are

6 claims that --

7          MR. DAHIYA:  That's not the issue.

8          THE COURT:  Yes, it is.

9          MR. DAHIYA:  No, no, no.  I mean I --

10          THE COURT:  If they're foreclosed by the judgment of

11 foreclosure then principles of res judicata would prevent them

12 from being raised --

13          MR. DAHIYA:  We --

14          THE COURT:  -- by either you -- by either your

15 client or by a successor interest.

16          MR. DAHIYA:  I know we have talked about in the

17 other case too, your Honor.  We believe that we stated that In

18 New York State I mean it's a permissive counterclaim.

19          THE COURT:  Okay.  So your whole objection here is

20 premised on the notion that these claims which could have been

21 raised in the context of the foreclosure action as defenses,

22 but were not, are not precluded by principles of res judicata

23 or by the Rooker-Feldman doctrine because in your view the

24 fact that New York has permissive counterclaims means that

1  they were not required to be raised, and therefore, they're

2  not precluded by res judicata?  Is that a fair summary of your

3  argument?

4          MR. DAHIYA:  That's one part, and the second main

5  part is if now I can't even go back to the state court because

6  the trustee settles -- when the trustee settles his claim with

7  Mr. Kerstein, I can't even go back because the trustee says,

8  "I settled those claims."

9          THE COURT:  Well, right, but that's what his -- he's

10 got the right to do that.  He has the absolute -- these are

11 claims that belong to the estate, and besides, these are

12 claims that the principles of res judicata, which apply in

13 state court, also foreclose.

14         MR. DAHIYA:  I'm not concerned about anything

15 flowing from the state court, your Honor.  I'm more concerned

16 about what will happen here that precludes me.  You see --

17         THE COURT:  I don't -- I know what you're not

18 concerned about.

19         MR. DAHIYA:  He's going to get a house.  He's --

20         THE COURT:  Okay.  Mr. Dahiya.

21         MR. DAHIYA:  Yes.

22         THE COURT:  Let's keep focused on the main issue

23 here.  Your argument is, if I'm understanding this correctly,

24 that the trustee didn't sufficiently consider the option of

1  pursuing these claims against the lender.

2           MR. DAHIYA:  Yes.

3           THE COURT:  Claims under, I think you said under the

4  banking law, usury claims --

5           MR. DAHIYA:  Yes.

6           THE COURT:  -- and claims under various consumer

7  protection laws, and that those claims, if the trustee had

8  pursued them, might potentially have yielded a greater

9  recovery to the estate than the amount that the trustee is

10 settling for.  Is that correct?

11          MR. DAHIYA:  Yes.

12          THE COURT:  Is that your argument?

13          MR. DAHIYA:  Yes.  The trustee --

14          THE COURT:  Okay.  But so this is all premised on

15 the notion that these claims are still available to be

16 asserted, notwithstanding principles of res judicata, which

17 would attach when -- by reason of the entry of the foreclosure

18 judgment.

19          MR. DAHIYA:  Yes, your Honor.  If we believe the

20 trustee is the one who has right to prosecute these claims,

21 then the trustee should have done it.

22          THE COURT:  Okay.  But the trustee -- but aren't

23 these claims that are precluded by the doctrine of res

24 judicata?

1          MR. DAHIYA:  No, they are not, your Honor.

2          THE COURT:  Okay.  And your belief is that they are

3 not precluded because of the New York -- the fact that under

4 New York State law counterclaims are permissive.  Is that

5 correct?

6          MR. DAHIYA:  Yes.  That's true.

7          THE COURT:  Okay.  Is that -- that's your argument?

8  That's the sum and substance of it?

9          MR. DAHIYA:  Yes.

10          THE COURT:  Okay.  All right.  "Under New York law a

11 final judgment on the merits precludes the parties or their

12 privies from relitigating claims that were or could have been

13 raised in that action."  That is a quote from <u>Marvel</u>

14 <u>Characters, Inc. versus Simon</u>, 310 Fed Third 280, 286 to 287,

15 Second Circuit, 2002.

16          "In New York res judicata also applies to defenses

17 that could have been litigated, including defenses to a

18 foreclosure."  <u>Yeiser versus GMAC Mortgage Corp.</u>, 535 F Sup

19 Second 413, 421, Southern District of New York, 2008.

20          Mr. Dahiya contends that New York's permissive

21 counterclaim rule trumps the doctrine of res judicata because

22 claims such as those that he contends should be pursued by the

23 trustee were not required to be raised, nor were they actually

24 litigated in the foreclosure action.  Quote, "While New York

1  does not have a compulsory counterclaim rule, a party is not

2  free to remain silent in an action in which he is the

3  defendant, and then bring a second action seeking relief

4  inconsistent with the judgment in the first action by

5  asserting what is simply a new legal theory."  Henry Modell &

6  Co., Inc. versus Minister Elders and Deacons of Reformed

7  Protestant Dutch Church, 68 New York Second 456, 461, 1986.

8           "New York's doctrine of res judicata requires a

9  court to analyze whether the second action impairs the rights

10 or interests established in the prior action."  See e.g., the

11 case just cited as 461, 462, Classic Automobiles, Inc. versus

12 Oxford Resources Corp., 204 AD Second 209, at 209, First

13 Department, 1994.

14          In this case any attempt to collaterally attack the

15 notes and the mortgages underlying the foreclosure judgment

16 based upon federal consumer laws or usury law is -- runs afoul

17 of New York's doctrine of res judicata --

18          MR. DAHIYA:  Here is the --

19          THE COURT:  -- and for that reason I respectfully

20 overrule your objection to the settlement, and I think that

21 this hearing is concluded.

22          MR. KRAMER:  Thank you, your Honor.

23          MR. SOMER:  Thank you, your Honor.

24          THE COURT:  You may submit an order.

1        MR. KRAMER:  Thank you, your Honor.  Should I do one

2  order dealing with both motions or separate orders?

3        THE COURT:  Yes.

4        MR. DAHIYA:  The concern that I have is he's got a

5  house and Mr. -- there is a lien of the lender on the house.

6        THE COURT:  Okay.  This is -- this hearing is over,

7  Mr. Dahiya.

8        MR. DAHIYA:  Okay.  Thank you, Judge.

9

10                  *          *          *

11

12                      **CERTIFICATION**

13

14  I, Catherine Aldrich, certify that the foregoing is a correct

15  transcript from the electronic sound recordings of the

16  proceedings in the above-entitled matter.

17

18  _____          September 30, 2014

19        Catherine Aldrich